IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                      23-CR-99-LJV

SIMON GOGOLACK, et al.,

        Defendants.

---

### REPLY IN SUPPORT OF MOTION FOR A STAY

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby submits the following reply in support of its motion for a stay of the Magistrate Court's order requiring an *in camera* inspection of grand jury minutes (ECF No. 436).

### I.    ARGUMENT

In their response in opposition to the government's motion for a stay, the defendants throw inconsequential barbs at the government's counsel, misstate the facts and the record, and ignore entire portions of the government's brief. In doing so, the defendants fail to meaningfully contend with the government's likelihood of success on appeal, the realities of the injury it would face if the stay were denied, or the public's interest. Because the balance of the equities weighs in favor of granting a stay through the duration of the appeal, the Court should grant the government's motion and set a briefing schedule that accounts for the parties' interest in expeditiously resolving the government's appeal of the Magistrate Court's order.[1]

---

[1] The government filed its appeal of the Magistrate Court's order on June 4, 2025. *See* App. Mag. Ct. Order, ECF No. 443, (dated June 4, 2025).

1

A. **The defendants fail to address the government's arguments regarding its likelihood of success on appeal.**

In its motion for a stay, the government devoted approximately four pages of analysis detailing, albeit in summary fashion, why its appeal is likely to succeed. *See* Mot. for Stay, at 13–17. In response, the defendants claim, in conclusory fashion, that "[t]he government cannot meet" its "heavy" appellate "burden". Resp. in Opp., at 6, ECF No. 441, (dated June 3, 2025) To the extent the defendants address the merits at all, they contend that they "made the requisite showing of particularized need by proving that the material they seek is needed to avoid a possible injustice, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 7.

That contention is hard to reconcile with the record, which demonstrates that the Magistrate Court ordered the disclosure of material—namely, transcripts of instructions—that the defendants never asked for, based on an issue they never raised, and for reasons neither explained in his oral ruling nor substantiated by any record evidence. *See* Oral Arg. Tran., at 103–04. The record thus shows that, to the extent the Magistrate Court perceived a particularized need, it was not based on the defendants' showing, which is what the standard requires. *See United States v. Calk*, 87 F. 4th 164, 186 (2d Cir. 2023) ("[T]o overcome the presumption of regularity that attaches to a grand jury proceeding, the defendant, who bears the burden of persuasion, must present particularized proof of an" impropriety. (internal quotations omitted)).

The defendants also claim that the Magistrate Court "determined" that the defendants "came forward with more than mere speculations that the grand jury was misled." Resp. in Opp., at 7. But a review of the Magistrate Court's ruling dispels that assertion, too. The Magistrate Court made no findings whatsoever that the defendants satisfied the particularized

need standard. *See* Oral Arg. Tran., at 103–04. In addition to depriving this Court of the ability to engage in meaningful appellate review, the lack of specific findings should leave all involved with doubt that the Magistrate Court applied the governing standard at all—an issue raised in the government's motion for a stay that the defendants leave unaddressed. *See U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 173 F.3d 757, 760 (10th Cir. 1999) ("The district court shall state on the record, and with specificity, why the particularized need has been established."); *cf. United States v. Carter*, 489 F.3d 528, 538 (2d Cir. 2007) (acknowledging that "specific factual findings . . . permit[s] meaningful appellate review" in the sentencing context).

Even if the Magistrate Court had accepted the defendants' arguments as establishing a particularized need, there is no logical relationship between the defendants' plaints—that the government deprived the grand jury of evidence that would enable it to conclude that Mr. Gerace and others learned of Ms. Quinn's cooperation through the March 27, 2023, detention hearing—and the relief that the Magistrate Court ordered—the *in camera* inspection of legal instructions provided to the grand jury. The lack of nexus between the issue the defendants presented and the relief the Magistrate Court ordered is likely why the defendants never asked for the disclosure of legal instructions to begin with.

Most glaringly, the defendants never address the elephant in the room: the Magistrate Court wandered far from the party presentation principle to decide the basis for disclosure: some (still unknown) issue regarding grand jury instructions. Their failure to address this portion of the government's motion reflects a tacit acknowledgement that the Magistrate Court "sall[ied] forth" from fundamental tenets of the American legal system to "look[] for" a perceived "wrong[]" that the defendants never raised to "right." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

3

Because "[t]he single most important factor" when considering a stay "is [the movant's] likelihood of success on the merits," and because the government's initial motion and appeal make that demonstration, the Court should grant the government's motion. *Clark v. Santander Bank N.A.*, No. 3:22-CV-0039 (SVN), 2023 WL 7110558, at *4 (D. Conn. Oct. 27, 2023) (citing *In re Baker*, No. 05-CV-3487 (CPS), 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005)).

### B. Failure to grant a stay will immediately harm the government and the grand jury but impose no non-speculative harm on the defendants.

The defendants' strongest argument relates to the second factor—whether the government will be irreparably injured if the Magistrate Court inspects instructions provided to the grand jury. It is true that, to the extent the government will be injured by the Magistrate Court's *in camera* inspection of the legal instructions, that injury is felt institutionally, as opposed to personally. But that does not render the harm any less real or significant. As the Supreme Court explained in *United States v. Williams*, the grand jury is "a constitutional fixture in its own right," one that "belongs to no branch of the institutional Government" but serves "as a buffer or referee between the Government and the people." 504 U.S. 36, 47 (1992) (first quote quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977)). That said, the grand jury is not a subsidiary of the court, either. Rather, the grand jury's "institutional relationship with the Judicial Branch has traditionally been . . . at arm's length." *Williams*, 504 U.S. at 47. That arm's length relationship has resulted in the grand jury being "functional[ly] independent from the Judicial Branch," *id.* at 48, which has engendered the judiciary's "reluctan[ce] to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure," except in the most exceptional of circumstances. *id.* at 49–50.

The "particularized need" standard heeds this delicate balance. *See Douglas Oil Co. v. Petro Stops N.W.*, 441 U.S. 211, 217–220 (1979). When it is ignored, disregarded, or misapplied, the "harm" suffered is nothing short of an abridgement of the grand jury's independence, an unsettling of pre-constitutional institutional "relationships between the prosecutor, the constituting court, and the grand jury, itself," and an arrogation of the judicial power, at the expense of another branch of government and a quasi-independent entity. *Williams*, 504 U.S. at 50. And unlike the potential harms that the defendants suggest they *may* face if a stay is granted, the erosive injury that th government and the grand jury face is completed as soon as the Magistrate Court reviews grand jury transcripts without properly applying the particularized need standard.[2]

By contrast, the injuries that the defendants claim they may face if a stay is granted are unsupported and speculative. Specifically, the defendants urge that the stay "adversely effects the Defendants['] ability to effectively prepare dispositive motions, including Motions to Dismiss counts in the Indictment, and dispositive *Brady* Motions."[3] Resp. in Opp., at 8. But that argument fails for two reasons. First, the defendants' theory of injury revolves around the Magistrate Court finding an impropriety in the instructions. *See* Oral Arg. Tran., at 103–04. As the defendants' themselves tacitly concede, the Magistrate Court might not conclude that the grand jury was improperly instructed. *See* Resp. in Opp., at 8 (noting that the

---

[2] On that score, the public interest lies in granting the government's motion for a stay. The government agrees with the defendants that the public has an "interest in a fair and speedy trial." Resp. in Opp., at 10. But fairness is measured against the rules—like the "particularized need" standard—and the prudential doctrines—like the party presentation principle—that apply to judicial proceedings. Where both rules and prudence are abandoned, principles of fundamental fairness militates in favor of granting the stay.

[3] To the extent the defendants invoke *Brady* as a basis for irreparable injury, the government has, and is, disclosing *Brady* material to the defendants. The parties are presently negotiating an amended protective order to further facilitate *Brady* disclosures.

Magistrate Court would determine "what, *if any*, portion [of the grand jury minutes] should be disclosed to the defense" (emphasis added)). Thus, unlike the immediate injury the government and the grand jury will face if the stay is lifted, the defendants will only be injured if the Magistrate Court ultimately discloses the instructions, should they exist, and even then, the injury will only materialize as a modest delay in the defendants' ability to review a transcript. Thus, in addition to being speculative, any injury stemming from the stay will not prejudice the defendants. The same cannot be said for the eroding norms and relationships between the government, the grand jury, and the federal judiciary. Accordingly, this factor also counsels in favor of enlarging the stay.

      **C.    The defendants' complaints about the timing or length of the government's motion for a stay are meritless.**

Finally, the defendants issue a litany of complaints regarding the timing or length of the government's motion for a stay. *See, e.g.*, Resp. in Opp., at 2–3 (complaining that the government did not move for a stay at the conclusion of oral argument and also complaining that the government waited eight days to file its motion for a stay); *id.* at 10 (same); *id.* at 11 ("The government constantly complain[s] about delay, but then files a 19-page Motion [for] a Stay."). None of these gripes merit denying the government's motion.

It goes without saying that there is no rule requiring a party to orally move for a stay at the conclusion of a proceeding; written motions are entirely acceptable.[4] Moreover, to the

---

[4] The government did not move for a stay at the conclusion of oral argument because it needed to obtain the transcript, review what the Magistrate Court stated and ruled, determine the appropriate course of in consultation with U.S. Attorney's Office management. These are routine steps, not novel concepts, in the government's decision-making process. This is particularly so where, as here, the Magistrate Court ordered *in camera* disclosure of grand jury transcripts on a basis that was neither briefed, nor argued, by any party. The decision to appeal the Magistrate Court's disclosure order was thus made subsequent to the court proceeding in consultation with the U.S. Attorney's Office's management.

6

extent the defendants grumble about the length of the government's motion, the government notes that the Magistrate Court has previously made clear that it wants the parties to rigorously consider and apply a four-factor test when seeking a stay. *See* Order, ECF No. 256, (dated Oct. 9, 2024). After providing background and context to its motion, the government applied those four factors, despite disagreeing with the Magistrate Court that the four-factor test applies in this context.[5] *See generally* Mot. for Stay. The defense may not like having to respond to a motion, but that does not mean that the tax inherent to litigation is cause for denial.

## II. CONCLUSION

For the reasons stated herein, the government respectfully requests that the Court extend the stay through the conclusion of this appeal and set a briefing schedule that will expeditiously address the defendants' concerns about delay.

DATED: Buffalo, New York, June 5, 2025.

MICHAEL DIGIACOMO
United States Attorney

---

[5] The defendants aver that "[b]y email at the close of business on Friday, May 30, 2025, [the government] requested an oral stay of disclosure awaiting further rulings by the District Court." Resp. in Opp., at 3. This is an inaccurate characterization of government counsel's email. Specifically, at 3:52 p.m., government counsel addressed the District Court's staff, CC'ing a member of the Magistrate Court's staff and all of the defense attorneys, on the following message:

> Yesterday afternoon, the government filed a motion to stay the Magistrate Court's order directing us to disclose grand jury minutes for an *in camera* inspection. *See* Mot. for a Stay, ECF No. 436, (dated May 29, 2025). Does the Court intend to act on that motion today? If not, I will prepare our submissions to Judge McCarthy's chambers. To that end, I am CC'ing Jennifer Vernen, so that she can be prepared for our in-person submission.

Plainly, government counsel never solicited an "oral" ruling. Resp. in Opp., at 3. Rather, government counsel inquired whether the Court intended to act on the government's motion because, if not, counsel was prepared to deliver materials for the Magistrate Court's *in camera* inspection.

BY: s/ CASEY L. CHALBECK
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
Casey.Chalbeck@usdoj.gov