IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.                                                    23-CR-99-EAW

SIMON GOGOLACK, et al.,

              Defendants.

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM REGARDING THE DEFENDANTS' MOTIONS TO SEVER PURSUANT TO RULE 8(b)

On January 6, 2026, the Court invited the parties to file supplemental briefing concerning Messrs. Ermin, Gerace, and Hinkle's motion for severance pursuant to Federal Rule of Criminal Procedure 8(b). *See* Dkt. 728. Specifically, the Court inquired whether the joinder of certain counts was appropriate when the scope of the Court's analysis was confined strictly to the indictment's allegations. *See id.* at 2. After carefully considering the relevant caselaw, the government will not oppose motions to sever Counts 11 through 18 (the Gogolack kidnapping and witness tampering charges); Counts 19 through 22 (the Hinkle drugs and firearms charges); Count 24 (the Ermin firearm charge); and Count 25 (the Roncone firearm charge). The remainder of the counts are properly joined under Rule 8(b).

### I.    LEGAL FRAMEWORK

Federal Rule of Criminal Procedure 8(a) permits joinder of *offenses* against a single defendant in three circumstances: where the offenses are (1) "based on the same act or transaction"; (2) based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan"; or (3) "of the same or similar character." FED. R. CRIM. P. 8(a).

By contrast, Rule 8(b) permits joinder of defendants only "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." FED. R. CRIM. P. 8(b). So, unlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of "the same or similar character." *See* Fed. R. Crim. P. 8(a). Thus, though both subdivisions of Rule 8 focus on the nature of the acts constituting the alleged offenses, 8(b) provides a more restrictive test when multiple defendants are involved.

Rule 8 does not explicitly state which of its two sub-divisions apply where defendants in multi-defendant cases seek to sever certain offenses from others. "One logical approach would invoke Rule 8(a) when defendants seek severance of *offenses*, . . . and Rule 8(b) when defendants seek severance of *defendants* . . . ." *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988). But that is not the approach adopted by the Second Circuit. Instead, looking at its past cases, the Second Circuit has held that "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)." *Id.* (citing, among other cases, *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir. 1975)).[1]

That history is worthy of exploration, less because it answers why the Second Circuit elevated Rule 8(b) over Rule 8(a) in such circumstances, notwithstanding the presence of

---

[1] Various district courts have read *Turoff*'s broadly-phrased holding narrowly, concluding that it does not apply where a defendant in a multi-defendant case seeks to sever offenses in which he is the only named defendant. *See, e.g.*, *United States v. Pizarro*, No. 17-CR-151 (AJN), 2018 WL 1737236, at *3 (S.D.N.Y. Apr. 10, 2018) ("[I]f the movant is the only defendant named in the count he or she seeks to sever, . . . Rule 8(a) provides the governing standard."); *United States v. Biaggi*, 705 F. Supp. 852, 861 (S.D.N.Y. 1988) (Motley, J.) (concluding that where the defendant in a multi-defendant indictment moves to sever a count in which he is the sole defendant charged, the motion is assessed under Rule 8(a) and not Rule 8(b)); *United States v. Clemente*, 494 F. Supp. 1310, 1315 (S.D.N.Y. 1980) (Sand, J.) ("When a defendant in a multiple defendant case named in one count seeks to sever other counts in which he alone is charged, Rule 8(a) controls."); *but see United States v. Biaggi*, 909 F.2d 662, 676 (2d Cir. 1990) (declining to resolve "the issue of whether *Turoff* should be limited in the manner suggested by Judges Motley and Sand). This Court need not decide whether those district courts have appropriately applied *Turoff*'s holding because, between the three of them, Messrs. Gerace, Ermin, and Hinkle have moved to sever counts in which they are not the sole named defendant.

2

"logical" alternatives, *id.*, and more because it illustrates the Circuit's broad construction of Rule 8(b)'s "act or transaction or . . . series of acts or transactions" standard. FED. R. CRIM. P. 8(b).

Start with *Papadakis*, the principal case relied upon by *Turoff* to elevate Rule 8(b)'s primacy above Rule 8(a).[2] 510 F.2d at 287. There, defendant-appellant Papadakis argued that his conviction should be reversed due to improper joinder under Federal Rule of Criminal Procedure 8(b). Count One of the indictment charged a multi-object obstruction conspiracy to (1) defraud the United States by obstructing federal law enforcement agencies in investigating narcotics law violations; (2) to obstruct the communication of such information to a criminal investigator; and (3) to commit substantive crimes involving the possession, concealment and sale of narcotics. *Id.* at 299. Papadakis was not charged in Count One. However, Papadakis was a named defendant in Count Four, which charged a narcotics conspiracy involving overlapping overt acts. *Id.*

In connection with both Counts One and Count Four, the indictment charged as follows:

1. in Counts Two, Three, and Five, co-defendants, Daly and Novoa;
2. in Count Eight, co-defendants Daly, Novoa, Ramos, and Nieves;
3. in Counts Nine and Ten, Daly, Novoa, and Ramos;
4. in Count Six, Papadakis; and
5. in Count Seven, Papadakis.

*Id.*

---

[2] In announcing the rule that "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)," *Papadakis*, 510 F.2d at 300, the Second Circuit relied, in part, on the Fifth Circuit's decision in *United States v. Bova*, 493 F.3d 33, 35 (5th Cir. 1974), *abrogated on other grounds by United States v. Lane*, 474 U.S. 438 (1986)). *Bova*, in turn, cited *Cupo v. United States*, 359 F.2d 990 (D.C. Cir. 1966), *King v. United States*, 355 F.2d 700 (1st Cir. 1966), and Wright, Federal Practice & Procedure, Crim. Sec. § 144 (1969) for this proposition. But as both *Bova* and Professor Wright candidly acknowledged, applying Rule 8(b) exclusively in a trial involving multiple defendants advanced certain policy interests even though "it may well be doubted . . . this was the intention of the draftsmen" who promulgated the rule. *Bova*, 493 F.2d at 35.

3

Papadakis argued that Count One—in which he was not named as a defendant—should have been severed from Counts Four through Ten. *Id.* The Second Circuit disagreed, reasoning that "[t]he indictment charged all defendants with conspiracy to violate and substantive violations of" narcotics offenses, "and the indictment stated that certain of the overt acts committed in furtherance of the conspiracy charged in count one also furthered the conspiracy charged in count four." *Id.*

*Turoff* followed *Papadakis*, and involved two fraudulent schemes: one between the New York City Taxi Commissioner, Jay Turoff, to install certain models of taxi meters manufactured by his co-defendants, and another to underreport income derived from both the taxi-meter scheme and, more predominantly, other sources of business to the IRS. *See* 853 F.2d at 1037, 1039–41. More specifically, Count One of the indictment charged Turoff and his associates, Alan and Harriet Silvers, with conspiracy to commit mail fraud. *Id.* at 1041. Counts Two through Twelve charged Turoff with substantive mail fraud crimes arising the taxi-meter scheme.[3] *Id.* Count Thirteen charged Turoff and the Silvers with conspiracy to defraud the United States in the collection of its tax revenue. *Id.* Counts Fourteen through Seventeen charged Turoff with making false statements on his income taxes. *Id.* Count 18, meanwhile, charged the Silvers with making a false statement on their income tax returns. *Id.*

On appeal, the appellants claimed that their taxi-meter fraud charges were impermissibly joined with their tax fraud charges, which predominantly (but not exclusively) encompassed income related sources of revenue beyond the taxi-meter scheme. The Second Circuit, however, thought joinder was proper under Rule 8(b). As the Circuit saw it, the tax fraud scheme "stemmed from" the taxi meter scheme, even though the identity of the funds

---

[3] At minimum, Counts Two through Nine also charged the Silvers. *See Turoff*, 853 F.2d at 1041.

4

derived from the latter did not sufficiently overlap with the unreported income at issue in the former.[4] *Id.* at 1044. In that regard, the Second Circuit concluded that "the tax fraud hinged on the fraudulent activities taken to advance the [taxi meter] conspiracy," such that "*proof* of one scheme [was] indispensable for a full understanding of the other." *Id.* (emphasis added). Therefore, joinder under Rule 8(b) was proper.

The Second Circuit revisited Rule 8(b) one year later, in *United States v. Attanasio*, 870 F.2d 809 (2d Cir. 1989). *Attanasio* involved multiple defendants charged jointly in two conspiracies to impede the IRS. *Id.* at 811. However, each of the three appellants in the case "was charged with only one of the two conspiracies." *Id.* On appeal, the appellants argued, in relevant part, that they were improperly joined because the two conspiracies were distinct.

The Second Circuit rejected these arguments, concluding that "[t]he transactions alleged in both conspiracy counts were a part of a series of acts that *shared a common purpose*: to conceal and launder [one appellant's] income . . .". *Id.* at 815 (emphasis added). Grounding its analysis (seemingly) on the facts adduced at trial, the Second Circuit explained that each of the three appellants had some involvement in both charged conspiracies, even though they were not named in the indictment. *See, e.g.*, *id.* ("The actions of Robert Attanasio and Mallon were intertwined with the See–Clear and the capital gains conspiracies, respectively.").

This fact-intensive approach to ascertaining whether defendants were alleged to have participated in the same acts or series of transactions continued in *United States v. Feyrer*, 333 F.3d 110 (2d Cir. 2003), a multi-defendant, multi-count case wherein it concluded that joinder

---

[4] Whereas *Papadakis* generally confined its analysis to the indictment's allegations, the parameters of *Turoff*'s analysis are less defined. *Turoff*'s lengthy discussion of the evidence adduced at trial at minimum suggests that the Circuit may have looked beyond the four-corners of the indictment to conclude that joinder under Rule 8(b) was proper.

5

under Rule 8(b) was proper where the "charges . . . were united by overlapping facts and participants and a common plan." *Id.* at 114.  Indeed, the Second Circuit noted that "even if the district court had tried the[] two defendants separately, *the evidence* at one trial would essentially duplicate *the evidence* at the other." *Id.* (emphases added).  Rejecting the notion that joinder would be improper under those circumstances, the Circuit advised that it "use[s] a common sense approach when considering the propriety of joinder under Rule 8(b)", one anchored in a reasonable person's ability to "recognize the common factual elements" amongst charges that would "permit joinder." *Id.* (quoting *Turoff*, 853 F.2d at 1044).

Five years later, in a footnote, the Second Circuit effectively announced that it was confining this "common sense" approach to whatever "common factual elements" between counts could be ascertained from the face of an indictment. *See United States v. Rittweger*, 524 F.3d 171, 178 n.3 (2d Cir. 2008) ("Without deciding the issue, however, we caution that the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment, just as the language of the Rule does not allow for the consideration of evidence at trial."); *see also United States v. Bonventre*, 646 F. App'x 73, 80 (2d Cir. 2016) (unpublished) (noting that "the propriety of joinder turns on what is alleged in the indictment, not on evidence later adduced" (citing *Rittweger*, 524 F.3d at 178 n. 3).[5]

---

[5] Though the Second Circuit claimed not to decide the issue, at least one district court has concluded that *Rittweger*'s core reasoning compels district courts to confine their Rule 8(b) analyses to an indictment's four corners. *See United States v. Valentin*, No. 23-CR-292 (RPK), 2024 WL 4444417, at *2 (E.D.N.Y. Oct. 8, 2024) (Kovner, J.) (concluding that *Rittweger*'s reasoning "forecloses consideration of government proffers and defense proffers alike" and collecting cases). Specifically, *Rittweger* asked whether joinder under Rule 8(b) "is proper when the overwhelming evidence presented at trial concerned proof of a conspiracy that involved some, but not all, of the named defendants" and held that joinder was proper, proof notwithstanding, due to the indictment's allegations. 524 F.3d at 174.

6

Beyond its reference to the Rule's "plain language," *Rittweger* cited no authority for this specific proposition.[6] Indeed, the only case cited by the Circuit was *United States v. Wilson*, 26 F.3d 142, 153 (D.C. Cir. 1994), which, contrary to *Rittweger*, stated that it "permits [ ] trial court[s] to consult the indictment *as well as any other pretrial evidence offered by the government*" in determining "whether joinder of multiple defendants in a single prosecution is proper." *Id.* at 153 (emphasis added). Nor did *Rittweger* attempt to reconcile the pleading requirement it effectively announced with Rule 7, which demands of indictments only that they contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). In fact, contrary to the pleading rule imposed by *Rittweger*, Rule 7 expressly states that indictments "*need not* contain a formal introduction or conclusion." *Id.* (emphasis added). Yet, that is precisely what *Rittweger* requires for multi-count, multi-defendant indictments. The upshot is that to ensure that trials are not duplicated—which will no doubt prompt objections of prejudice from defendants—the government must use speaking indictments that make explicit the relationships about counts.

Nevertheless, though *Rittweger* narrowed the parameters of the Rule 8(b) analysis, it did not discard the core principle animating *Papadakis* and its progeny: that counts may be joined under Rule 8(b) "when they have 'sufficient logical connection' to one another." *United States v. Pizarro*, No. 17-CR-151 (AJN), 2018 WL 1737236, at *3 (S.D.N.Y. Apr. 10, 2018) (quoting *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990), *aff'd*, No. 19-2391, 2023 WL 3332539 (2d Cir. May 10, 2023).

---

[6] Circuits are split as to whether a Rule 8(b) analysis is limited to the four corners of an indictment. *Compare, e.g.*, *United States v. Halliman*, 923 F.2d 873, 883 (D.C. Cir. 1991) ("In this circuit, however, the government need not demonstrate the propriety of its joinder decisions on the face of the indictment."), and *United States v. Grey Bear*, 863 F.2d 572 (8th Cir. 1988) (en banc) (evenly splitting on whether a Rule 8(b) analysis is confined to the face of the indictment).

II.   APPLICATION

Because it withdraws its opposition to Messrs. Gerace, Ermin, and Hinkle's severance motion with respect to Counts 11 through 18 (the Gogolack kidnapping and witness tampering charges); Counts 19 through 22 (the Hinkle narcotics and firearm charges); Count 24 (the Ermin firearms charge); and Count 25 (the Roncone firearm charge), the instant memorandum focuses on the propriety of joining Count 4 (the distribution resulting in death charge); Count 5 (the Knight false statement charge); Counts 6 through 10 (the Gogolack narcotics and firearm charges); and Counts 23 and 26 (the Knight and Roncone false statement charges) to Counts 1 through 3 (the Crystal Quinn obstruction charges).

A.   **Count 4 is Properly Joined with Counts 1 Through 3 Under Rule 8(b).**

Count 4 is properly joined under Rule 8(b) because all of Counts 1 through 3 and Count 4 involve the same "act": Mr. Gogolack's distribution of fentanyl. FED. R. CRIM. P. 8(b). Specifically, Count 1, which Messrs. Gerace, Ermin, and Hinkle seek to retain, alleges that, as an Overt Act, Mr. Gogolack "intentionally provided Crystal Quinn with a lethal dose of fentanyl." Sec. Super. Indict., at 20 ¶ 47. In that respect, Counts 1 and 4 are premised, in part, on "the same act or transaction." FED. R. CRIM. P. 8(b).

Because Count 4 is already charged as an Overt Act in Count 1, joinder is proper. *See Papadakis*, 510 F.2d at 299 (concluding that joinder under Rule 8(b) was proper where overlapping overt acts unified the conspiracy count in which the defendant-appellant was charged with the conspiracy count in which the defendant-appellant was not charged); *United States v. Burke*, 789 F. Supp. 2d 395, 398 (E.D.N.Y. 2011) ("In this Circuit[, it] is well-settled that joinder is appropriate pursuant to Rule 8(b) when, as is the case here, a defendant in a RICO indictment is charged only with the predicate acts as independent offenses and not with

8

violating the RICO statute."); *United States v. Webb*, No. 15CR252S3PKC, 2020 WL 6393012, at *3 (E.D.N.Y. Nov. 1, 2020) (concluding that joinder was proper under Rule 8(b) where defendants, though not charged in the RICO count they asked to be severed, were charged with substantive offences that were "charged as predicate acts for the alleged RICO conspiracy").

      **B.**    **Count 5 is Properly Joined with Counts 1 Through 3 Under Rule 8(b).**

Likewise, Count 5 is properly joined under both Rule 8(b). Count 5 relates to Mr. Knight's provision of false statements to the FBI on August 3, 2023, in an interview regarding the events prior to Ms. Quinn's death. *See* Dkt. 24 at 35. That same false statement is alleged as Overt Act ¶ 60 in Count 1. *See id.* at 23 ¶60 (alleging that "[o]n August 3, 2023, KNIGHT made false and misleading statements to the FBI, including that HINKLE had not been present at the July 27, 2023[,] poker game that KNIGHT had organized and that GOGOLACK and Crystal Quinn had attended"). Thus, joinder is proper under Rule 8(b) because Mr. Knight's false statement is part of the "same series of acts or transactions" that constitute the offense charged in Count 1. FED. R. CRIM. P. 8(b); *see Papadakis*, 510 F.2d at 299; *Burke*, 789 F. Supp. 2d at 398.

      **C.**    **Counts 6 Through 10 Are Properly Joined with Counts 1 Through 3 Under Rule 8(b).**

Count 6 charges Mr. Gogolack, along with known and unknown co-conspirators, with a narcotics conspiracy involving the possession with intent to distribute fentanyl and other substances beginning in July 2023 and continuing until October 2023. *See* Dkt. 24 at 35–36. Count 7 charges Mr. Gogolack with maintaining a drug-involved premises used for the purpose of manufacturing, distributing, and using, among other substances, fentanyl. *Id.* at 36. Counts 8 through 10, meanwhile, charge Mr. Gogolack with various firearm offenses—

9

to wit, possessing a firearm in furtherance of drug trafficking (Count 8), unlawfully possessing firearms as a felon (Count 9), and unlawfully possessing firearms as a user of controlled substances (Count 10. *Id.* at 37–38.  The Indictment illustrates that these charges are logically related to Counts 1 through 3 in three respects.  *See Ruiz*, 894 F.2d at 505 (assessing whether counts had a "sufficient logical connection to warrant joinder").

First, Count 1 alleges a conspiracy designed to obstruct an investigation into narcotics, firearms, and death-related offenses that facially overlap with—and stem from—the narcotics and firearm offenses charged against Mr. Gogolack in Counts 6 through 10.[7]  Specifically, Count 1 alleges that the defendants conspired to "caus[e] the death of Crystal Quinn to corruptly obstruct and impede" her "from cooperating with members of federal law enforcement." *Id.* at 11.  As part of that conspiracy, Mr. Gogolack and others "would silence Crystal Quinn by any means necessary, including causing her death," which he accomplished by distributing a fatal dose of fentanyl to her on or about July 31, 2023, as alleged in Overt Act ¶ 71. *Id.* at 12 ¶ 11, 24 ¶ 71.  In that regard, the conspiracy charged in Count 1 (and whose factual allegations are incorporated by reference in Counts 2 and 3), "stemmed from" the narcotics conspiracy alleged against Mr. Gogolack in Count 6, just as the tax fraud in *Turoff* stemmed from the defendants' fraudulent taxi-meter scheme. *Turoff*, 853 F.2d at 1044.  By that same token, it is plain from the face of the indictment that there exists a "logical connection" between the conspiracy to "silence Crystal Quinn by any means necessary", Mr. Gogolack's distribution of fentanyl to Ms. Quinn, and the narcotics conspiracy charged in

---

[7] Counts 2 and 3 incorporate by reference the allegations made in Count 1 and the Introduction.  Accordingly, discussions of Count 1's allegations necessarily extend to Counts 2 and 3.

Count 6 between Mr. Gogolack and others, known and unknown, to possess with intent to distribute fentanyl. *Id.* at 12 ¶ 11; *Ruiz*, 894 F.2d at 505.

That same conclusion applies with respect to Count 7, the maintaining a drug-involved premises charge. As other Overt Acts make clear, Mr. Gogolack distributed the lethal dose of fentanyl at his residence, which directly overlaps with the maintaining a premises charge alleged in Count 7. *Compare* Dkt. 24 at 20 ¶ 45 (alleging that 296 Scott Avenue was Mr. Gogolack's residence), and *id.* at 20–21 ¶ 49 (alleging that after Ms. Quinn died, Mr. Gogolack "manipulated and staged the crime to make it look like Crystal Quinn's death was an accidental overdose or a suicide," including by "removing and attempting to conceal physical evidence . . . *some distance from the house*" where, in fact, the overdose occurred (emphasis added)), *with id.* at 36 (alleging that Mr. Gogolack maintained 296 Scott Avenue for the purpose of "distributing," among other acts, "fentanyl"). Thus, Count 7 and Counts 1 through 3 are "united by overlapping facts and participants and a common plan" that involve Mr. Gogolack's use of his residence to distribute narcotics. *Feyrer*, 333 F.3d at 114.

Second, Count 1's manner and means overlap with Mr. Gogolack's narcotics and firearm offenses. For example, Count 1 alleges that the defendants, including Mr. Gogolack, conspired to conceal

> the manner of Crystal Quinn's death from law enforcement and misdirecting law enforcement and FBI agents to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, *which was investigating federal drug and firearm offenses* and the death of Crystal Quinn, a federal witness;
>
> [the] evidence related to the death of Crystal Quinn to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, which was *investigating federal drug and firearm offenses* and the death of Crystal Quinn, a federal witness; [and]
>
> . . .

11

>   the unlawful activities of GOGOLACK, KNIGHT, HINKLE, RONCONE, and the RBMC to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, which *was investigating federal drug and firearm offenses*, and the death of Crystal Quinn, a federal witness

*Id.* at 12 (emphases added).

In like manner, Count 1 alleges that it was both "part of the conspiracy" that Mr. Gogolack and others "made efforts to conceal physical evidence from members of law enforcement investigating the death of Crystal Quinn, and the criminal activities of [certain] defendants," including the activities of Mr. Gogolack. *Id.* at 15 ¶ 16. For example, as alleged in Overt Act ¶ 71, Mr. Gogolack "arranged with Knight for Knight to conceal a number of Gogolack's firearms in Knight's residence." *Id.* at 24 ¶ 71. The "criminal activities" to which those concealment efforts relate are reflected in Counts 8 through 10, namely, that Mr. Gogolack used firearms in furtherance of his drug-trafficking scheme, and unlawfully possessed firearms as both a felon and user of controlled substances. This factual overlap—even if measured on just the Indictment's face—confirms that joining Mr. Gogolack's firearm offenses to Counts 1 through 3 is proper under Rule 8(b). *See Feyrer*, 333 F.3d at 114.

Third, and finally, Counts 6 through 10, which allege offenses ranging from July to October 2023, temporally overlap with the obstruction charged in Count 1, which is alleged to have occurred between February 2023 and January 5, 2024. *Id.* at 8. This "temporal relationship" forms the backdrop of the counts, which, for the reasons stated above, are integrally related and logically connected. *Turoff*, 853 F.2d at 1044.

In sum, owing to their facial, factual overlap, Counts 1 through 3 and Counts 6 through 10 are sufficiently related under Rule 8(b). As in *Attanasio*, "[t]he transactions alleged in both" sets of counts "were part of a series of acts that shared a common purpose": to obstruct the Grand Jury's investigation of firearms, narcotics, and witness-death offenses

directly related to Mr. Gogolack's distribution of fentanyl and possession of firearms.[8] 870 F.2d at 815. "Furthermore, there was an overlap of participants and acts." *Id.* Mr. Gogolack participated in both the obstruction charged in Count 1 and the narcotics and firearm offenses charged in Counts 6 through 10. Those offenses also involved overlapping acts, namely Mr. Gogolack's possession and distribution of fentanyl within his residence, and his possession of firearms. Thus, "[a]ny 'reasonable person would easily recognize the common factual elements that permit joinder.'" *Id.* (quoting *Turoff*, 853 F.2d at 1044); *see also Valentin*, 2024 WL 4444417, at *4 (agreeing with the general principle that "an obstruction charge will often be properly joined under Rule 8(b) to an underlying offense the defendant seeks to cover up"); *Stein*, 428 F. Supp. 2d at 142 ("The claim of an overall conspiracy said to link the substantive crimes charged in an indictment justifies joinder under Rule 8(b)."). Accordingly, joinder under Rule 8(b) is proper.

## CONCLUSION

For the reasons stated above, the government respectfully asks the Court to deny any motion seeking to sever Counts 4 through 10, 23, and 26 from Counts 1 through 3.

DATED: Buffalo, New York, February 4, 2026.

                                        Michael DiGiacomo
                                        United States Attorney

BY:   s/ CASEY L. CHALBECK
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202

---

[8] Of course, the inverse is also true: the obstruction was, in part, designed to facilitate Mr. Gogolack's involvement in an ongoing narcotics conspiracy. *Cf. United States v. Stein*, 428 F. Supp. 2d 138, 142 (S.D.N.Y. 2006) ("The alleged conduct at issue in the Tax Evasion and Obstruction counts all is said to have been in furtherance of that conspiracy.").

(716) 843-5881
Casey.Chalbeck@usdoj.gov

14