UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          v.

PETER GERACE, JR.,

          Defendant.

**DECISION AND ORDER**

1:23-CR-00099 EAW

Pending before the undersigned is a motion filed by defendant Peter Gerace, Jr. ("Gerace") seeking dismissal of the second superseding indictment on various grounds. (Dkt. 545). Gerace also moves to suppress because of a subpoena compelling production from a defense investigator. (*Id.*).[1] The government opposes the requested relief. (Dkt. 611 (redacted opposition); Dkt. 612 (sealed unredacted opposition)). Gerace filed a reply in further support of the motion. (Dkt. 619). Oral argument was held before the undersigned on September 29, 2025. (Dkt. 636). But the matters were not ripe for resolution until underlying issues about requests for grand jury records were resolved, which occurred on January 16, 2026, when the undersigned issued a Decision and Order denying the various requests by Gerace and other defendants for grand jury records. (Dkt. 735). Accordingly, the Court now resolves the issues raised in Gerace's motion to dismiss by denying the motion to dismiss and leaving the motion to suppress unresolved pending

---

[1] Gerace's motion is supported by a memorandum of law filed in a redacted format at Docket 581, and under seal in an unredacted format at Docket 582.

further briefing and argument.  Familiarity with the underlying procedural and factual history of this case is assumed.

## I.  **DUPLICITY**

Gerace argues that counts 1 through 3 are duplicitous because in both counts 2 and 3, the "allegations of the Introduction and Count 1 are repeated and re-alleged and incorporated herein by reference as though set forth fully herein."  (*See* Dkt. 24 at 31-32).  According to Gerace, this means that the obstruction of justice conspiracy charged in count 1 is also charged in counts 2 and 3, thus making those latter counts duplicitous because they "allege two distinct conspiracies within a single count."  (Dkt. 581 at 36).[2]  Gerace argues that he is prejudiced by this because a jury may convict him of the charges in counts 2 and 3 based on a finding that he engaged in the count 1 conspiracy.  (*Id.* at 45).  He argues that if only the factual allegations of count 1 had been incorporated into counts 2 and 3, there would be no issue, but the incorporation language was not so limited.  (Dkt. 619 at 6).

The government opposes Gerace's motion, arguing that he has conflated the meaning of allegations and charges, with the former as referenced in Federal Rule of

---

[2]    In a footnote, Gerace also argues that counts 2 and 3 are multiplicitous.  (Dkt. 581 at 38 n.17).  The Court declines to consider this argument as not properly raised and developed.  *See, e.g.*, *United States v. Bin Wen*, No. 6:17-CR-06173 EAW, 2019 WL 364571, at *4 (W.D.N.Y. Jan. 30, 2019) (citing cases that support the principle that "a court need not consider arguments relegated to footnotes[.]").  Indeed, the government argued in opposition that the issue was not properly raised (*see* Dkt. 611 at 4 n.2), and in reply, Gerace did not address the issue.

Criminal Procedure Rule 7(c)(1)[3] pertaining to declarations or assertions of fact and not including a formal accusation of an offense or violation of the law.  (Dkt. 611 at 9 (citing Black's Law Dictionary definitions of "allegation," "charge," and "offense")).

"An indictment is duplicitous if it joins two or more distinct crimes in a single count."  *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).  "A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from the allegation in a single count of the commission of a crime by several means.  The latter is not duplicitous."  *Id.* (citation and quotation omitted).  "Duplicity, of course, is only a pleading rule and would in no event be fatal to the count."  *United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977); *accord United States v. Sturdivant*, 244 F.3d 71, 79 (2d Cir. 2001) (explaining that duplicity does not require dismissal of an indictment, but various other remedies are available to address duplicity, including appropriate jury instructions that ensure jury unanimity regarding the underlying conduct); *United States v. Abakporo*, 959 F. Supp. 2d 382, 391 (S.D.N.Y. 2013) ("[B]ecause duplicity is a pleading rule, a duplicitous count is not fatal where the charges can be reformulated.").  As recently explained by the Second Circuit:

> [A] single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses[.]  Instead, [a]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of [the] requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby.  To determine whether a defendant was actually prejudiced by a duplicitous indictment, we look to

---

[3]    Pursuant to Federal Rule of Criminal Procedure 7(c)(1), a "count may incorporate by reference an allegation made in another count."

whether the duplicitous count risks unfairness to the defendant, in three respects.

First, a duplicitous indictment creates prejudice if it deprives a defendant of his right to a unanimous verdict. If, for example, a guilty verdict does not reveal whether the jury found [a] defendant guilty of only one crime and not the other, or guilty of both, the duplicitous count risk[s] that the jurors may not have been unanimous as to any one of the crimes charged. . . .

Second, an indictment is impermissibly duplicitous if it implicates the Double Jeopardy Clause of the Constitution. Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. . . .

Third, a defendant is prejudiced by a duplicitous indictment if it implicate[s] his right[ ] to notice of the charge against him. An indictment must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.] It must also, broadly speaking, inform[ ] the defendant of the charges he faces. The purpose of this requirement is to enable him to prepare a defense. Accordingly, a duplicitous indictment becomes impermissibly duplicitous where it fails to assur[e] the defendant adequate notice of the charges that the government seeks to prove.

*United States v. Kandic*, 134 F.4th 92, 99-100 (2d Cir. 2025) (alterations in original) (quotations and citations omitted).

While there is plainly factual overlap, counts 1, 2 and 3 allege distinct conspiracies based on different statutes. Count 1 charges obstruction of justice conspiracy in violation of 18 U.S.C. § 371[4] against Gerace and five co-defendants. The alleged time period of the charged conspiracy is February 2023, through January 5, 2024. The alleged conspiratorial

---

[4]     Section 371 provides in relevant part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

agreement was to defraud the United States of and concerning its governmental functions and rights, "particularly the transaction of the official business of the United States District Court of the Western District of New York, and the Grand Jury of the United States District Court for the Western District of New York conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction" and to violate 18 U.S.C. § 1503 "by corruptly endeavoring to influence, obstruct, and impede the due administration of justice, that is, the proceedings of the federal grand jury and the trials of the United States District Court for the Western District of New York." (Dkt. 24 at 8-9). Count 2 charges a witness tampering conspiracy in violation of 18 U.S.C. § 1512(k)[5] against Gerace and three co-defendants. The alleged time period of the charged conspiracy is March 2023, through August 1, 2023. The alleged conspiratorial agreement was to violate various provisions of 18 U.S.C. § 1512 through conduct directed toward a federal cooperating witness (Crystal Quinn), including causing her death. (*Id.* at 31-33). Count 3 charges a witness retaliation conspiracy in violation of 18 U.S.C. § 1513(f)[6] against Gerace and the same three co- defendants charged in count 2. The alleged time period of the charged conspiracy is the same as count 2, and the alleged

---

[5]     Section 1512(k) provides: "Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

[6]     Section 1513(f) provides: "Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

conspiratorial agreement was to violate various provisions of 18 U.S.C. § 1513 through conduct directed toward Crystal Quinn, including causing her death. (*Id.* at 33-34).

While seemingly acknowledging that the issue here is not the incorporation of factual allegations from one conspiracy count to the next (Dkt. 619 at 6 ("Had the government incorporated purely factual contentions from Count 1 into Count 2 & 3, there would be no issue.")), Gerace fails to cite any case that granted the requested relief (dismissal) under the circumstances present here. Instead, cases that have considered the issue have concluded that incorporating allegations from one count into another does not create duplicity concerns. For instance, in *United States v. Vilar*, No. 05 CR. 621(RJS), 2008 WL 4298545 (S.D.N.Y. Sept. 5, 2008), then District Judge Richard C. Sullivan rejected a similar argument that incorporating by reference allegations in an earlier conspiracy count somehow charged both a conspiracy and substantive charge in the later counts that included the incorporated allegations, explaining "courts in this Circuit have consistently recognized that mere incorporation of previously alleged factual allegations does not make a count impermissibly duplicitous." *Id.* at *2; *see also United States v. Rittweger*, 259 F. Supp. 2d 275, 289-90 (S.D.N.Y. 2003) (rejecting duplicity argument where only factual allegations from one charged conspiracy were realleged in other charged conspiracy).

Gerace argues that *Rittweger* supports his argument, because in that case only the factual allegations from the one charged conspiracy were realleged, and the specific charging language of the conspiracy was not incorporated into the other charged conspiracy. (Dkt. 619 at 6). It does appear that the indictment in *Rittweger*, as well as

*Vilar*, can be distinguished from the second superseding indictment here.[7]  But the decision in *United States v. Gosy*, No. 16-CR-46, 2019 WL 948179 (W.D.N.Y. Feb. 27, 2019), cannot be so distinguished.  In other words, in *Gosy*, the indictment realleged in later counts all paragraphs in the count 1 conspiracy count, but the motion to dismiss on duplicity grounds was denied.  Instead, the court struck two paragraphs from the latter counts as surplusage where they contained the specific charging language of the count 1 conspiracy. *Id.* at *7; *see also United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992), *abrogated on other grounds sub nom United States v. Wells*, 519 U.S. 482 (1997).

At first blush, the second superseding indictment does appear to incorporate the charging language from count 1 into counts 2 and 3.  But the Court is persuaded by the government's argument that the reference to "allegations" refers to the factual allegations in the introduction and count 1, and not to the charging language.  The Court agrees that the definitions from Black's Law Dictionary cited by the government support that interpretation.[8]  Furthermore, it would make no sense for Rule 7(c)(1) to be interpreted to

---

[7]    The undersigned has reviewed the third superseding indictment at issue in *Vilar*, and it appears that the paragraphs containing the charging language were specifically not incorporated by reference into the later counts.  *See Vilar*, Case No. 05 CR. 621 (RJS), Dkt. 133 (S.D.N.Y. Aug. 15, 2006).

[8]    In reply, Gerace claims that "[g]enerally speaking" reference to allegations could include "facts, charges, claims or legal conclusions," but he cites a law review article on the sufficiency of a civil complaint that the Court does not find persuasive.  (Dkt. 619 at 4 n.3).  He also seems to suggest that the term "allegations" only modifies the reference to "Introduction" and not "Count 1" (*id*. at 4), but that is not a reasonable reading of the sentences in the first paragraphs of counts 2 and 3.  And finally, he questions whether the grand jurors were instructed on the meaning of the term "allegations," which is an issue irrelevant to the duplicity inquiry.  (*See generally* Dkt. 735).  In other words, Gerace does

allow for charging language to be incorporated by reference. Such an interpretation would conflict with later language in that paragraph requiring "each count" to "give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." So when Rule 7(c)(1) states that a count may incorporate by reference an allegation made in another count, this suggests that it is the factual allegations that are incorporated by reference from one count to the next, and not the charging language. And at least some out-of-circuit cases have held just that—that when allegations of an earlier count are incorporated by reference, it is the factual allegations that are realleged and not the charging statutes. *United States v. Simpson*, No. 3:09-CR-249-D(06), 2011 WL 2880885, at *6 & n.12 (N.D. Tex. July 15, 2011) ("The court has located several cases, however, that appear to treat the incorporation of another count as if were incorporating the facts alleged in the other count. And although the indictment could have been framed in a way to avoid this issue—i.e., by explicitly stating that the factual allegations were being incorporated from one count to another—it can be read to support the conclusion." (collecting cases)), *order clarified on other grounds*, No. 3:09-CR-249-D(06), 2011 WL 13286046 (N.D. Tex. Aug. 25, 2011); *see also United States v. LaBar*, 506 F. Supp. 1267, 1276 (M.D. Pa. 1981), *aff'd*, 688 F.2d 826 (3d Cir. 1982) ("The portions of the succeeding counts that are incorporated by reference are only

---

not sufficiently counter the government's point about the incorporated allegations being limited to the factual allegations of the introduction and count 1.

the acts alleged in each count, not the portions of each count that charge substantive violations of the law.").[9]

Thus, for these reasons, the Court rejects Gerace's arguments that counts 2 and 3 are duplicitous of count 1. The Court concludes that the latter counts incorporate by reference only the factual allegations from the introduction and count 1, and not the charging language. But even if there was a duplicity issue, the remedy would not be dismissal. Rather, any concerns in this regard can be addressed through careful and appropriate jury instructions. And Gerace has not otherwise shown that this would not be an appropriate remedy.

## II.    *KLEIN* CONSPIRACY

Gerace moves to dismiss count 1 on the ground that it charges a non-economic *Klein* conspiracy.[10] (Dkt. 581 at 49-50). But as the government correctly responds, this argument is foreclosed by binding Second Circuit precedent that has recently been reaffirmed. *See United States v. Lemay*, No. 24-2328-CR, 2025 WL 1873404, at *3 (2d Cir. July 8, 2025). Accordingly, this Court is foreclosed from granting the relief requested by Gerace.

---

[9]    It is unclear to the undersigned why the United States Attorney's Office in this District does not take the simple step to expressly exclude the charging language from the incorporation by reference language. This would avoid having to defend against a duplicity challenge like the one raised by Gerace. That said, for the reasons set forth herein, the Court concludes that dismissal on duplicity grounds is not warranted.

[10]    This is a reference to *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957).

III.    **ATTORNEY 1**

Gerace argues that it is unclear from the second superseding indictment whether Attorney 1 is alleged to be a co-conspirator and that, at a minimum, a bill of particulars is necessary to identify which alleged acts are acts of deceit or dishonesty.  (Dkt. 581 at 50-54).  Gerace cites no case in support of his requested dismissal on these grounds, and even a cursory review of the second superseding indictment reveals that it more than adequately tracks the language of the charged statutes.  *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) ("[W]e have consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'").  In addition, the Court agrees with the government that when the magistrate judge denied Gerace's request for a bill of particulars (*see* Dkt. 438 at 60)[11] and Gerace did not appeal that decision to the district court, he failed to preserve the issue.  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").  Raising the issue now on a motion to dismiss after the deadline for filing non-dispositive motions is not proper.[12]

---

[11]    This citation is to the transcript pagination, not CM/ECF.

[12]    The undersigned disagrees with Gerace's argument that the magistrate judge was somehow suggesting that the request for a bill of particulars could be raised again.  (Dkt. 619 at 9).  Rather, the magistrate judge's comments appear to be reflecting his views on how the issue could impact resolution of dispositive motions.  But resolution of dispositive issues is for the undersigned, not the magistrate judge.

That said, the Court agrees with the suggestion by Gerace that these issues need to be sorted out before trial. (Dkt. 619 at 11 n.7). And the Court has taken steps to do just that. (*See* Dkt. 745 (scheduling order for early trial briefing on admissibility of evidence involving Attorney 1)).

## IV.    CLAIMED DEFECTIVE GRAND JURY PROCEEDINGS

As explained in the Court's Decision and Order issued on January 16, 2026, the undersigned found no basis for disclosure of the grand jury records here. (Dkt. 735). As outlined in that decision, the Supreme Court has limited the grounds to dismiss an indictment based on conduct before a grand jury, *see United States v. Williams*, 504 U.S. 36, 46 (1992), and the arguments advanced by Gerace in support of dismissal are legally and factually unsupported. (*See* Dkt. 581 at 56-61). Gerace grounds his motion for dismissal on the argument that Overt Act ¶ 25 is "clearly false and utterly absurd" (*id*. at 57), but that is an issue for trial. And as the undersigned concluded in the Decision and Order issued on January 16, 2026, the grand jury was not misled with respect to Overt Act ¶ 25. (Dkt. 735 at 39-40).

## V.    PROSECUTORIAL STEERING

Gerace argues that the case should be dismissed because of prosecutorial steering. (Dkt. 581 at 61-68). In support of his argument, Gerace details the history of the prosecutions against him, including his own alleged manufactured recusal of the district judge presiding over case numbers 19-CR-227 and 23-CR-37 and the government's motion to disqualify his prior criminal defense attorney handling those cases; another district judge's questioning of the government about its own possible judge-shopping during the

argument about disqualification of Gerace's former defense attorney in those other cases; and the connections between this case and the prior prosecutions against Gerace, including the former having a sub-set of the FBI case file number used for the latter.[13]  (*Id.*).

Gerace is correct that "a system which permits *de facto* prosecutorial judge-shopping 'raises substantial due process concerns.'"  *Francolino v. Kuhlman*, 224 F. Supp. 2d 615, 632 (S.D.N.Y. 2002), *aff'd*, 365 F.3d 137 (2d Cir. 2004) (quoting *United States v. Pearson*, 203 F.3d 1243, 1257 (10th Cir. 2000)); *cf. United States v. Ashrafkhan*, 821 F. App'x 428, 437 (6th Cir. 2020) ("[N]o court has ever held that prosecutorial 'judge shopping'—without more—is a per se violation of a defendant's due-process rights." (collecting cases)).  That said, Gerace's arguments are fundamentally flawed because they are based on an argument that the government failed to steer the case to a particular judge— in other words, the prosecution allowed the case to be randomly assigned to a district judge on the criminal case-assignment wheel in Buffalo, rather than specifically designating the case as related to Gerace's other pending criminal cases.  Moreover, even if this inaction by the government that permitted random assignment could raise a legitimate due process argument, Gerace's motion fails because he suffered no prejudice—within days of Gerace being indicted, the case was reassigned to the district judge handling his other criminal cases.  *United States v. Khatiwala*, No. CR DKC 23-390, 2024 WL 1050839, at *3 (D. Md. Mar. 11, 2024) ("Most courts have held that 'in order to establish a due process violation

---

[13]      In support of his motion based on prosecutorial steering, Gerace also argues for disclosure of grand jury records.  (Dkt. 581 at 68).  The undersigned has rejected that argument for the reasons set forth in the Decision and Order issued on January 16, 2026. (*See* Dkt. 735 at 40).

for prosecutorial judge-shopping, a defendant must demonstrate that he has been actually prejudiced by the assignment of a particular judge to his case.'" (quoting *Pearson*, 203 F.3d at 1258)); *United States v. Forbes*, 150 F. Supp. 2d 672, 681 (D. N.J. 2001) ("The cases which discuss [the issue of whether due process rights are implicated by the government's involvement in the assignment of a criminal case] . . . overwhelmingly conclude that due process concerns are not implicated by the assignment of judges in a criminal matter unless the criminal defendant can point to some specific prejudice." (citations omitted)).

This case started with the filing of a criminal complaint against defendant Simon Gogolack ("Gogolack") on August 17, 2023. (Dkt. 1). No district judge was assigned at that time, nor would one be assigned until the case was indicted. *See* Loc. R. Crim. P. 7(a). The original indictment was returned naming Gogolack as the sole defendant on September 13, 2023. (Dkt. 12). The original indictment charged a narcotics conspiracy in violation of 21 U.S.C. § 846, maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1), possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8), and unlawful user of controlled substances in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). (*Id.*). At the time, the District's Local Rules of Criminal Procedure had no provision about the assignment of cases when related to another or the filing of a Criminal

Case Related Form ("CCRF") by the United States Attorney's Office.[14]  However, as a matter of practice, that office would identify on a CCRF whether a case was related to another matter pending before a district judge.  The CCRF filed when Gogolack was first indicted did not identify the case as related to any others pending before a district judge, and therefore the case was randomly assigned to U.S. District Judge John L. Sinatra, Jr.[15]

A superseding indictment was returned against Gogolack on September 20, 2023. (Dkt. 18).  It added two counts of kidnapping in violation of 18 U.S.C. § 1201(a)(1), two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(1), two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(2)(A), and two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(3).  (*Id.*).  The case remained assigned to Judge Sinatra.

Then, on October 24, 2025, a criminal complaint was filed against defendant Howard Hinkle, Jr. ("Hinkle") alleging drug and firearm charges.  (Dkt. 1).[16]  Hinkle was

---

[14]    The Local Rules of Criminal Procedure were amended effective January 1, 2025, so that Local Rule of Criminal Procedure 7(b) now defines when a criminal case is presumptively related to one or more pending criminal cases and the requirement that the United States Attorney's Office identify that relationship through the filing of a CCRF.

[15]    The three district judges with duty stations in Buffalo (Judge Richard J. Arcara, Judge Lawrence J. Vilardo, and Judge Sinatra), receive assignments of criminal cases on a random basis from the case-assignment wheel in Buffalo.  In addition, some of the district judges with duty stations in Rochester, including the undersigned, handle criminal cases in Buffalo on an as-needed basis.

[16]    Because, at the time of its filing, the complaint against Hinkle was assigned a different non-indictment case number (1:23-mj-05219), there are duplicated docket references in the early entries of this case's docket, and therefore any docket citations must be considered along with the corresponding date.

ordered released on conditions by the assigned magistrate judge, but the government appealed that determination, and the case was assigned to Judge Sinatra as related to the pending Gogolack indictment.[17]  *See United States v. Hinkle*, Case No. 1:23-mr-00469, Dkt. 1 (W.D.N.Y. Oct. 27, 2023).  Judge Sinatra ordered Hinkle detained (Dkt. 12), and at the end of the detention hearing, Judge Sinatra gave the following instruction to the prosecutor:

> If there is ever a CR case here, Ms. Chalbeck, there should be a case related form, per clerk's office policy, so that the time that one district judge invests in a case isn't wasted if it is assigned inadvertently to another District judge, which sometimes happens.  So, a case related form would be called for, if there is a CR case ultimately.

*Hinkle*, Case No. 1:23-mr-00469, Dkt. 13 at 61-62.  Ultimately, when a second superseding indictment was returned on January 5, 2024, against nine defendants, including Gerace, Hinkle, and Gogolack, the case remained assigned to Judge Sinatra.  (Dkt. 24).[18]  On January 8, 2024, the matter was reassigned to U.S. District Judge Lawrence J. Vilardo. (Dkt. 26).[19]

---

[17]     The government's appeal from the magistrate judge's release order concerning Hinkle was apparently the first time a CCRF was filed identifying this case as related to another one pending before a district judge.  That form identified the charges against Hinkle as related to the Gogolack indictment.

[18]     When the second superseding indictment was returned, the government filed an attachment to the CCRF identifying the case as related to six matters pending before three different district judges, including the criminal cases pending against Gerace assigned to Judge Vilardo (case nos. 19-CR-227 and 23-CR-37).

[19]     In the undersigned's role as Chief Judge, a letter was sent to the U.S. Attorney on December 19, 2023, concerning the use of the CCRF in connection with this case and the various appeals of magistrate judges' release orders.  In a communication in response dated January 2, 2024, the U.S. Attorney denied any efforts at judge-shopping in this case.  The

At bottom, Gerace's complaint is that the case should <u>not</u> have been randomly assigned, but should have been assigned to Judge Vilardo from the start as related to the other criminal cases pending against him. But Gerace does not have "a right to have his case heard by a particular judge," *Brik v. Brodie*, No. 23-CV-4330 (LJL), 2024 WL 1604194, at *7 (E.D.N.Y. Apr. 12, 2024) (citations omitted), *appeal dismissed*, No. 24-1347 (2d Cir. Dec. 3, 2024), nor has he cited any case standing for the principle that a due process violation occurs when a case is randomly assigned—let alone that the random assignment of a case could justify dismissal of an indictment.[20] And the judge to whom Gerace claims the case should have been assigned (Judge Vilardo), was assigned within a matter of days of Gerace being named as a defendant in the case. Thus, under no reasonable

---

undersigned understands that the government has produced this communication to defense counsel. Ultimately, based on the undersigned's consultation with Judge Vilardo and Judge Sinatra, the case was reassigned to Judge Vilardo. *See generally* 28 U.S.C. § 137 (granting broad discretion to federal district courts in the assignment of cases to particular judges). Through the Court's Local Rules Committee, and in consultation with the U.S. Attorney's Office, Federal Public Defender, and the defense bar, Local Rule of Criminal Procedure 7 was amended to define the meaning of a related case and the use of the CCRF.

[20] In his reply memorandum, Gerace highlights the government's failure to discuss *Cruz v. Abbate*, 812 F.2d 571 (9th Cir. 1987) (Dkt. 619 at 32), addressing claimed violations of the Guam Civil Procedural Code because of the lack of random assignment of criminal cases. Like other cases addressing the issue of prosecutorial steering, the claimed violation of the defendants' rights in *Cruz* was due to the lack of random assignment. Here, by contrast, Gerace is arguing that his rights were violated when the case was randomly assigned. Gerace has cited no case supporting this theory that the random assignment of a case constitutes prosecutorial steering.

scenario could the events with respect to the assignment of this case justify dismissal of the indictment.[21]

## VI.    **INVESTIGATOR SUBPOENA**

Gerace argues that he is entitled to dismissal or suppression because the government issued a subpoena compelling production before the grand jury from Paul Lawrence ("Lawrence"), who Gerace argues was part of his defense team in case nos. 19-CR-227 and 23-CR-37.  (Dkt. 581 at 69-76).  Gerace claims that Lawrence was part of the defense team when he was represented in those cases by Steven M. Cohen, Esq. ("Cohen"), that any communications with Lawrence were privileged, and that Lawrence's work product was also privileged.  (*Id.* at 70-71).

Because much of the filings related to this issue are sealed, the Court will avoid reciting details about the background of the issue.[22]  In sum, the grand jury investigating the death of Crystal Quinn sought to compel Lawrence's testimony and production of documents through a subpoena.  The government reasonably understood based on a sworn affidavit by Cohen that Lawrence was not retained by Cohen to work as an investigator on

---

[21]    Eventually, the case was reassigned by Judge Vilardo to the undersigned because of scheduling conflicts with a capital case assigned to Judge Vilardo.  (Dkt. 511; Dkt. 512).

[22]    To resolve this issue, the undersigned has reviewed, among other things, the sealed Exhibit A attached to Gerace's sealed memorandum of law (Dkt. 582); the government's sealed filing (Dkt. 612 at 41-72); the sealed filings by Cohen in *United States v. Gerace*, Case No. 1:19-CR-227, Dkt. 585 (W.D.N.Y. Aug. 9, 2023), and Dkt. 604 (W.D.N.Y. Aug. 15, 2023); the sealed filings related to the motion to quash filed in *Gerace v. United States*, Case No. 1:23-CV-01163-RJA (W.D.N.Y. Nov. 7, 2023), including the transcript of the proceedings before Judge Arcara (*id.* Dkt. 6); and Lawrence's grand jury testimony on November 8, 2023.

behalf of Gerace.[23]   The day before the return date of the subpoena, Gerace (through attorneys Eric Soehnlein and his current counsel, Mark Foti) moved to quash that subpoena, arguing that Cohen and Gerace had retained Lawrence and that his communications and work product were privileged.  *See generally Gerace*, Case No. 1:23-CV-01163-RJA, Dkt. 1.

The motion to quash was argued before Judge Arcara, who at the time was supervising the grand jury.  (*See* Dkt. 735 at 23 n.20).  The government argued that Gerace had failed to establish a privileged relationship with Lawrence, and that even if that burden had been met, there was a substantial need for Lawrence's fact work product.  *Gerace*, Case No. 1:23-CV-01163-RJA, Dkt. 3.  After hearing from counsel for Gerace, counsel for Lawrence, and government counsel (including in part on an *ex parte* basis), Judge Arcara denied the motion to quash.  Judge Arcara reaffirmed that decision during an appearance later that same day, when the attorneys went back before him concerning the production of an audio recording created by Lawrence.  *Id.*, Dkt. 6 at 27-30.  No appeal was pursued by either Lawrence or Gerace of Judge Arcara's ruling.[24]   *Cf. In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180 (2d Cir. 2007) (resolving appeal of district court's orders

---

[23]     In his sworn affidavit filed under seal in case no. 19-CR-227, Cohen tried to distance himself from any involvement with Lawrence's activities.  This cannot be reasonably disputed and any contrary argument is not credible.

[24]     Gerace also sought relief before Judge Vilardo in case nos. 19-cr-227 and 23-cr-37 involving the subpoena directed to Lawrence, but his requests were denied.  *See Gerace*, Case No. 1:19-CR-227, Dkt. 1164, Dkt. 1624.

directing compliance with grand jury subpoena despite privilege objections); *In re Grand Jury Subpoenas Dated June 5, 2008*, 329 F. App'x 302 (2d Cir. 2009) (same).

The government argues that five grounds justify denial of Gerace's motion: (1) the government did not falsely represent or omit information to the District Court, and instead Gerace failed to carry his burden to establish that the information sought was privileged; (2) Gerace cites no authority supporting his request to dismiss the indictment on this ground; (3) Gerace waived any work-product privilege involving Lawrence; (4) the crime-fraud exception would apply to Lawrence's work product; and (5) the recording of the interviews was likely discoverable under Rule 26.2. (Dkt. 611 at 64-76).

This Court need not reach all of the arguments raised by the government, at least at this time, because there is no basis to dismiss the indictment. Gerace has cited no case supporting dismissal of an indictment because the government presented privileged information to a grand jury—let alone such a case where the issue of privilege was litigated before the presiding grand jury judge and he rejected the privilege claims. As the undersigned emphasized in the Decision and Order entered January 16, 2026, the Supreme Court has made clear that a court may exercise its supervisory power to dismiss an indictment because of misconduct before a grand jury "where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *Williams*, 504 U.S. at 46. No authority suggests that the circumstances here constitute such a situation. Rather, "courts have declined to dismiss indictments because of the use of privileged matter before the grand jury, including testimony by attorneys as to privileged

communications. . . ."  *United States v. Bein*, 728 F.2d 107, 113 (2d Cir. 1984) (citations omitted); *see also United States v. Kingston*, 971 F.2d 481, 491 (10th Cir. 1992) ("Unless prejudice is shown, even if Appellant's attorney-client privilege were breached by the questioning of [attorneys] before the grand jury, such a breach does not bar the prosecution from proceeding altogether; it simply bars the prosecution from presenting the tainted evidence at trial."); *United States v. Colasurdo*, 453 F.2d 585, 596 (2d Cir. 1971) (even if privileged information was disclosed to grand jury, it was not a basis to dismiss indictment and there was no need for a hearing on the issue, explaining:  "Otherwise, before trial on the merits there would always be a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury, with resultant delay."); *United States v. Rondeau*, No. 92-CR-0080L, 2012 WL 1900553, at *1 (W.D.N.Y. May 24, 2012) ("Even crediting defendant's allegations as true, the alleged violations of the attorney-client privilege before the grand jury do not rise to the level of Governmental misconduct that merits dismissal of the indictment in this case."); *United States v. Schlesinger*, 360 F. Supp. 2d 512, 521 (E.D.N.Y. 2005) ("[T]he alleged violations of the attorney-client privilege before the grand jury do not give rise to the type of Government misconduct that would require dismissal of the indictment.").

　　　As for Gerace's request to suppress evidence, his request in this regard is phrased as an alternative request and it is not well developed.[25]  The Court agrees that whether the

---

[25]　　　In his reply memorandum, Gerace requests a hearing "[i]f there are any issues of fact that are unresolved by the motion practice. . . ." (Dkt. 619 at 38).  But he does not identify any such factual disputes that need to be resolved at a hearing, nor is the Court able to identify any such issues based on the current record.  Thus, at least for now,

information is admissible at trial needs to be resolved, and that is the more appropriate approach for addressing this issue. *Schlesinger*, 360 F. Supp. 2d at 521 ("Whether or not the evidence is privileged is better examined in the context of the trial [as opposed to a request to dismiss the indictment].").

But on this record the Court cannot resolve admissibility issues, especially without an affirmative indication from the government as to what evidence it will seek to admit at trial. Thus, until the Court has additional information, including the briefing contemplated by the Text Order issued on January 27, 2026 (Dkt. 745), it cannot resolve Gerace's alternative request to suppress. Thus, that aspect of the pending motion remains outstanding and unresolved.

## VII.    MOTION TO JOIN AND FOR LEAVE TO FILE ADDITIONAL MOTIONS

Gerace also includes a boilerplate request to join in co-defendants' motions to the extent the requested relief would be favorable to him. (Dkt. 581 at 76). The Court denies Gerace's requests without prejudice. *See United States v. Cobb*, 544 F. Supp. 3d 310, 344 (W.D.N.Y. 2021) ("[I]t is prudent to adopt a policy requiring each defense counsel to independently file motions on behalf of their clients and not simply file boilerplate motions seeking to join in relevant motions of co-counsel. One of the reasons for this policy is that co-defendants may not pursue their motions for a variety of reasons, including entering a plea of guilty." (citations and quotations omitted)); *United States v. Jones*, No. 5:05-CR-

---

Gerace's request for a hearing is denied without prejudice. *United States v. Gogic*, No. 22-CR-493 (ARR), ___ F. Supp. 3d ___, 2025 WL 3899726, at *4 (E.D.N.Y. Jan. 8, 2025) ("In assessing a defendant's motion for suppression, an evidentiary hearing is required only where the moving papers indicate a dispute of material fact.").

322 (NAM), 2006 WL 8457523, at *12 (N.D.N.Y. Sept. 26, 2006) ("Defendants do not, however, specify which motions they believe are consistent with their positions.  Thus, the Court has no basis on which to determine the propriety of any defendant joining any other defendant's motion.  Accordingly, defendants' motions to join co-defendants' motions are denied.").

Similarly, Gerace seeks leave to file further future motions that may become necessary.  (Dkt. 581 at 76-77).  The Court denies the boilerplate motion for leave.  If Gerace desires to file a subsequent pretrial motion that is untimely, he should seek leave to do so and explain why the motion was not filed in a timely fashion (*e.g.*, based on newly discovered information, a good cause basis for not initially filing, etc.).  Thus, the motion for leave to file additional motions is denied without prejudice.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court denies Gerace's motion to dismiss (Dkt. 545) but leaves the motion to suppress unresolved pending further briefing and argument.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        February 18, 2026
              Rochester, New York

- 22 -